**HEILAND v. LEE et al.**

**No. 6622.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 14, 1953.

Decided Nov. 9, 1953.

Haywood W. Corbett, Boston, for appellant.

C. E. Hancock, Jr., and R. E. Whitehurst, New Bern, N. C., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by Minnie Riggs Heiland against the executors under the will of Cora S. Cannon to recover the sum of $10,000 which the plaintiff claimed to be due her for services rendered to the testatrix under a contract made between them in September, 1949 and July, 1950. The case was tried before the District Judge without a jury and he reached the conclusion that the specific contract alleged was not sufficiently proved, but that the plaintiff had rendered services to the testatrix under circumstances which gave rise to an implied contract to pay for them and he found a verdict for the plaintiff on a

*quantum meruit* basis in the sum of $3624 with interest from the date of the death of the testatrix. There is little or no dispute as to the facts. The question for decision is whether the evidence was sufficient in law to prove the execution of an express contract.

Mrs. Heiland resided in Massachusetts at the time of the institution of this suit in 1951 with her husband, Harold R. Heiland, and their daughter. She was a niece of the testatrix. Mrs. Cannon lived with her husband, Burvel Cannon, in a house owned by them in New Bern, North Carolina. In 1948, while Mr. Heiland was working as an engineer on a boat in Connecticut, and Mrs. Heiland was living in Swansboro, North Carolina, she went to live with the Cannons at their request and from July 1 to November 10, 1948 took care of Mr. Cannon who was suffering from heart trouble. At the end of that period Mr. Cannon's condition was improved and Mrs. Heiland joined her husband in Connecticut.

Mr. Cannon died on August 14, 1949. On August 25, 1949 Mrs. Cannon wrote to Mrs. Heiland a letter which contained the following passage:

"Minnie what Burvel and I told you last year still stands. We both wanted you to have our home and if you can get well and Harold is willing to come here & stay I want you to come I dont want to give it to any one but you. I am old & may get helpless before I die & have to have someone to take care of me & he told me to give it to the one that took care of me But he wanted you to have it. dont tell this to anyone."

On September 2, 1949 Mrs. Cannon wrote to Mrs. Heiland another letter which contained the following passages:

"I just received your letter and cant tell you how glad I was to get it and I dont know how to ans. you. Of course I want you with me the worst I ever wanted any one, but I know you are not able to come to me and I could not bear for you to leave me once you were here. We both wanted you to have our home and the last time we ever talked the matter over He said if you got able to come to me and would stay & take care of me in my last days for me to give you this Home. But he said if you could not come to try to find someone that would stay & look after me. I am far from well But I stay up. I dont want you to come unless Harold is willing to come. I dont mean for you to feed & clothe me But just to look after me & cook me something to eat when I am in bed & not able to do for myself. * * * Burvel cautioned me about that I could rent my house out & rent me a room & make money But I want to stay home I have staid here for a long time & would like to remain the rest of the time if the Lord is willing. I miss Burvel worse every day I am so miserable. But I wont write any more now let me hear how you are as soon as you get this I am always"

Mrs. Heiland, as the judge found, accepted the proposal set forth in these letters and went to New Bern, North Carolina in September 1949 taking her eight year old daughter with her with the intention of living with Mrs. Cannon for the remainder of her life and rendering the services contemplated by the letters. She lived with Mrs. Cannon and rendered services, in accordance with the understanding between them from September 10, 1949 to July 9, 1950, and at that time was willing to continue. The services rendered were described by the judge as follows:

"The duties incident to the services in question were onerous and confining. The plaintiff during the period attended to practically all the household duties, she did the housecleaning, the washing and ironing, the cooking, and the shopping. Besides, she nursed Mrs. Cannon when she was sick, which was frequent, and served her meals to her in bed when she didn't feel like being up. Plaintiff very rarely left the home,

day or night, and almost constantly was at Mrs. Cannon's service. She contributed an average of $35.00 per week toward the household expenses, and she and her husband spent several hundred dollars for two trips from Massachusetts to New Bern. These expenditures were sufficient to offset any charge to cover board and lodging for plaintiff and her child during the period.

On July 9, 1950 Mrs. Cannon notified the plaintiff that she no longer desired her services as she had sold her house for $10,000 and proposed to move into an apartment; but as soon as the purchaser paid for the property she would buy bonds and give them to the plaintiff and she could take them and buy a house and settle down. These statements were proved by Mr. Heiland who was sent for at the time. Mrs. Heiland assented and resumed her residence with her husband in New England. Subsequently a nephew of Mrs. Cannon's came to live with her.

The judge held that Mrs. Heiland was disqualified from testifying as a witness in her own behalf as to the transactions between her and the testatrix, in accordance with the General Statutes of North Carolina of 1953, Vol. 1 B, § 8–51; and that the letters, although fully proved, did not constitute a sufficient memorandum to satisfy the requirement of the North Carolina statute of frauds, General Statutes of North Carolina, Vol. 1 C, § 22–2, that a contract to convey land shall be void unless the contract or some memorandum thereof be put in writing and signed by the party to be charged. The judge was of the opinion that the letters did not satisfy the general rule of law approved in Keith v. Bailey, 185 N.C. 262, 116 S.E. 729, that the memorandum of a contract to convey land is not valid under this statute unless it is reasonably certain and definite in its terms so that the substance and essential elements may be understood from the written agreement itself, unaided by recourse to parol evidence. He shows that the letters contained the statement that the deceased and her husband *wanted* Mrs. Heiland to have the house, but he held that this could not be construed as a reasonably certain and definite promise, and even it was coupled with the condition that both the plaintiff and her husband come to live with the writer during the remainder of her life.

■ In our opinion this conclusion was incorrect. The letters lacked the legal terminology usually found in a contract to convey land, but their plain meaning was that if Mrs. Heiland would render certain services which were adequately described, she would receive as compensation a piece of property which was specifically identified. These statements do not seem to us to be wanting in definiteness. The failure of the husband to accompany his wife to the Cannon home did not amount to a failure to perform the contract, for it is clear that Mrs. Cannon did not desire his services but those of his wife, and these were accepted by Mrs. Cannon as a fulfillment of the undertaking without complaint as to the husband's absence.

The plaintiff is therefore entitled to recovery and the amount of the recovery should be measured by the terms of the contract rather than by an estimate of the value of the services which she rendered during the period she was permitted to remain in the home of the testatrix. Specific performance of the contract, however, has become impossible and the plaintiff herself has waived specific performance and asks for money damages. The sale of the house which Mrs. Cannon believed to have been consummated fell through, and she continued to live in the house until her death on February 22, 1951 and by her will devised it to her nephew. He in turn conveyed it to another person.

The evidence as to Mrs. Cannon's statements in 1950 in respect to the sale of the house and the disposition of the proceeds was not controverted, and we see no reason in the record to reject it, particularly as Mrs. Cannon made no payment to Mrs. Heiland when she dis-

missed her, although Mrs. Heiland had rendered onerous and confining services for a period of ten months. The judge himself did not reject this evidence but, taking it in the light most favorable to the plaintiff, held that it was not sufficient to establish a definite and certain contract on the part of Mrs. Cannon to pay to the plaintiff the sum of $10,000 for the services she had performed. It was necessary for him to decide this point because of his opinion that the letters written in 1949 did not set out a binding agreement, and hence the plaintiff's right to recover under an express contract depended upon what took place between the parties in the summer of 1950.

In our view, the transaction of 1950 is important because it corroborates the making of the contract in 1949 and constitutes an agreement of settlement between the parties when the performance of the earlier agreement, according to its terms, was no longer desired by Mrs. Cannon; and since Mrs. Cannon failed to carry out the settlement the plaintiff is entitled to a verdict for the damages arising from the breach. Under the circumstances, however, the amount of the recovery should be limited to the market value of the house at the time of Mrs. Cannon's death. The sum of $10,-000 fixed by the settlement agreement was named under the impression that this amount would be received from the purchaser of the house. In other words, the intention of the parties was to place Mrs. Heiland in substantially the same financial position as she would have occupied if the original agreement had been consummated. The sale having failed through no fault of Mrs. Cannon, the damages should be based on the breach of the original agreement and should be measured by the market value of the property at her death.[1]

It is alleged in the complaint that the value of the property at that time was $10,000; but there is no evidence on the point except the amount of the purchase price fixed in the contract of sale that was not performed. The District Judge was not called upon to make any finding on this point under his theory of the case, and we are unable to make a finding in the present state of the record. The case will therefore be remanded with instructions to vacate the judgment and to enter judgment for the plaintiff for the value of the property on February 22, 1951, to be ascertained by the District Judge upon the evidence in the present record, with leave to the parties to present additional evidence of value if they desire to do so.

Reversed and remanded.

---

1. The complaint first filed set out the contract of 1949, the services rendered thereunder by the plaintiff, her dismissal by the testatrix, and the agreement of 1950, and concluded with a claim for $10,000 damages. Later an amended complaint was filed which declared that the testatrix did not sell the house but devised it to a nephew who had conveyed it to another; and the alternate prayer was added that the devise and conveyance be declared null and void, and that the executor be required to convey the house to the plaintiff. Subsequently the plaintiff waived this new prayer and elected to take money damages for the breach instead of specific performance. The defendant contends that by these amendments the plaintiff abandoned her right to recovery under the contract of 1949 and is confined to recovery under the agreement of 1950. The point is not well taken. The amended complaint set out both agreements, the defendant's answer denied the existence of both agreements and the judge passed upon the validity of both agreements. Under Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C.A., the court has full power to pass upon all the issues raised in the instant case.